Ladies and gentlemen, please rise to report to the Connecticut Session Room. Good morning. Please be seated, everybody. We'll call the next case, please. Case number 321-0222, People of the State of Illinois, affidavit by Laura Byron v. Gerald Edwards, paneled by Michael Colton. Mr. Colton, are you ready to proceed? Yes, sir. Jerry Edwards wanted to meet the court. Do you want to step up to the podium, sir? As I was saying, Jerry wanted to be here today, but he can't because he's sitting in an 8-by-10-foot cell, because he's doing a 50-year sentence having been convicted of attempted murder of three police officers. What's interesting is that in his supposed plot to kill police officers that day, the very first thing he did was get police officers as far away from the scene as possible. He called in a false police report to get police officers away from the scene. Jerry Edwards had an intent to kill that day, but it was to kill himself. He had no intention to kill anyone other than himself, and all of his actions on that day reflected that and were in line with that. The strongest piece of evidence, if you can call it that, that the state had was the testimony of Deputy Bedford, who said that he was leaning over a skylight with a camera attempting to take a picture of Jerry Edwards when Jerry looked up, saw him, and almost shot his hand off. And if that really happened, Jerry Edwards is guilty of attempted murder, because obviously if you're seeing somebody, you're shooting at somebody, your hand is always not far from your face or your head or a vital organ, but that's not what happened. We had an investigator go out and measure the logistics of what Deputy Bedford described. Deputy Bedford said he was standing, straddling a brick wall. Counsel, I don't want to interrupt you, but you seem to be giving a closing argument here as opposed to addressing the procedural aspects. What sort of relief do you think that we can give you here today? I'm requesting that the three attempted murder charges be vacated, Judge. Vacated? Yes. Dismissed. And how do you suppose that we can do that? Based on the evidence that we put in in the hearing in the post-conviction petition, Judge, regarding what we feel is false testimony from Deputy Bedford. And you believe that that was timely? Yes. That you were telling me your petition was timely? I do, Judge. And this is a little bit of a complicated situation, as Your Honor is probably aware from my brief. Originally, Attorney Harris was representing Mr. Edwards. Mr. Harris, from my understanding, had withdrawn from the case. I filed my appearance. The clerk had told me that anything that I filed would be given to the judge who was handling the case. At some point in time, Judge Chippers decided to have a status on the case. And the docket indicates that he called me. I never got any kind of a message and did not leave a message. Subsequent to that, he dismissed the case. He dismissed the post-conviction petition. And that's when I filed the motion to reconsider as well as the motion to vacate. And, you know, my position, Judge, is that with a post-conviction petition being a quasi-civil matter, I cited to the court N. Ray Uphoff, U-P-H-O-F-F, in which the First District Appellate Court said where a motion has been made to vacate an order, the time of an appeal commences to run from the date the motion is disposed of on its merits. And obviously that's subsequent to my motion to reconsider, which I think the State conceded was filed timely and would have extended the date by 30 days. But if I hadn't filed the motion to vacate, or the motion to vacate would have been denied immediately, I could have filed an appeal at that point. But I filed the motion to vacate within 30 days of the denial of the motion to reconsider. And I would just submit, Judge, that it's a little bit of an odd situation where the judge was evidently reaching out to me, I would assume to get some input as to where I stood taking over the post-conviction petition, and was unable to reach me, but didn't leave a message. And I don't really know why Judge Chikris didn't, but I was not aware of that. If I had been aware of that, I could have addressed that, well, I've been hired and we're working on some issues. So I just would ask the court, given the extraordinary circumstances, or more unusual circumstances than we probably normally deal with in that type of situation, that the court allow me to argue on the merits here. Counsel, just so I'm straight, though, about what happened in court. You filed a post-conviction petition in a timely fashion, as ever you suggested. Well, Attorney Harris did originally. They were in the third stage, there was testimony, and then the family hired me to take over. The petition was languishing for a period of a couple years, and I got in the interim there. So it was not ruled upon on its merits. It was decided because you weren't there on that hearing date for whatever reason. For whatever, correct, Judge. Okay. You've answered my question. Okay, thank you. And like I'm saying, the best evidence, so-called, that the state had was Bedford. But, Counsel, just on the merits on Bedford. Sure. Is it your position that his credibility was not contested during the original trial? Well, it wasn't contested in what I felt was a legally sufficient way, Judge. So, in other words, it was contested. You just don't think it was contested enough? Enough or to a degree that the jury had anything to seize onto to realize that Bedford was not being truthful. To me, it was almost akin to him not being cross-examined at all on it because what we found was that the way this was described by Bedford could not have physically happened. And that was not expressed to the court. It was not, I'm sorry, to the jury. It was not argued. It was not the base of any cross-examination of Mr. Bedford other than Mr. Clancy asking a few questions, being dubious that Bedford could have reached there. But the jury would have no idea what the distances were, the size of the skylight. But he raised the issue you just tapped on, that it was dubious that he could reach it. Yes. Which raises the point that you're raising now in arguing that it just wasn't fully developed. Fully developed? And, Judge, I would say not at all developed. I mean, it's just, you know, I would submit that what was argued by Mr. Clancy was virtually worthless as far as telling the jury there's no way Bedford could have reached where these bullet holes were with the camera at the time of the shooting. And the jury has no concept of how far the skylight is from a brick wall and the length of the skylight. And I believe that But they had the photographs, right? Yes, sir. Yes, they had photographs. But, again, even with the photographs, I don't believe you can tell the distance because there aren't people in the photographs that they submitted and there would be no way to gauge how far the brick wall is from the skylight and, subsequently, the size of the skylight. Which Deputy Bedford said he reached over three-quarters of the way down the skylight and that's when he almost got his hand blown off. Thank you. And I believe our investigators showed that very clearly and I believe that's highly significant evidence because, I would argue to the court, that is the only significant evidence of attempted murder but it's not true. And the problem becomes, too, I believe, and I would argue to the court, that once the jury has reached the decision that Jerry was trying to kill Bedford, at that point, it's a short leap in logic to say he was trying to kill Bloom and Chavez as well. And that's what I refer to as the convo platter. They put both of the law enforcement officers in one count of attempted murder and I would submit their testimony was extraordinarily weak. Bloom testified. He didn't even know where the bullets were landing. So I don't know how you can have an attempted murder intent to kill when the victim has no idea how close he was to the bullets. Chavez lied two different times. He first of all lied that he said a bullet went right past him in the room when he was in the sniper position looking at Jerry. Crime scene investigator Clinton Smith investigated the room, found no evidence of a bullet whatsoever. So I would submit that wasn't true. And then also, Officer Chavez testified that a bullet hit a window sill, and this was in his report, right where he was standing looking at Jerry in the sniper position. Again, Clinton Smith, the crime scene investigator, said that he recovered no bullets that were above the marquee, which was below the level where these two officers were in their sniper position. So there was not any kind of credible evidence I would submit at all regarding Chavez and Bloom. And without bootstrapping the intent to kill from Deputy Bedford, I don't believe he would have had a conviction on those guys either. So I believe that all three attempted murder charges are invalid. And Jerry had plenty of opportunity at various times to shoot whoever he wanted. State's witness Julie Stratt testified that there were various times where, for instance, Chavez and Bloom were walking in front of the window without any protection. Jerry didn't shoot at them. Most significantly, an officer, Sergeant Olson, had brought a pack of cigarettes up the stairs to Jerry. Jerry made no attempt to shoot him whatsoever. And again, there's not a scratch on one individual here, Judge. Jerry's intent that day was just to keep law enforcement officers away from himself until he could accomplish what his goal was, which was to kill himself at that point. So I would just submit that the evidence regarding attempted murder, if you believe that Bedford is lying, is not there at all. Because the other two officers have very weak testimony regarding the intent to kill. And without Bedford, I don't believe there would have ever been a conviction on those charges. So we're asking for a vacation of all of those convictions regarding attempted murder. And, Judge, I would just state, too, that at no point, whether in trial or in post-conviction, was this ever rebutted by the State. And it would seem to be a very easy matter that if we're saying Bedford couldn't do it, what's the solution? Get Bedford on the roof, the same way I got an investigator on the roof, and have him show, either on a videotape or with measuring distances by an investigator, whether he could do it or not. Because if he can do it, our whole argument's out the window and Jerry's done. That was never done because it's impossible. And if it's impossible, there's no intent to kill here because it didn't happen the way it was described. Officer Schmidt, who was on the roof with Deputy Bedford, described this skylight, and he was saying you could barely see through it. And the idea that if he could barely see through it to where Jerry was, how could Jerry see through it to see where Deputy Bedford was? So I think the evidence regarding the attempted murder is very weak at that point, Judge. And I also feel what needs to be taken into account was Dr. Wazzaloo, who described Jerry as bipolar. This is not an individual who was in a normal mental state. He had severe mental problems that he was dealing with on that day. And, you know, obviously, leaving aside the fact that he was attempting to kill himself, he had a variety of other mental problems that were disturbing his thought process on that day. But everything he was doing, his intent was to avoid killing an officer but keep them at bay. And I would submit that otherwise you would have had some officer, somebody would have been shot, somebody would have been hit with a bullet. It never happened because that was not his intent on that day. And the other concern that I have, Judge, in this case was the context of the trial, that I think there were problems with the proof not being properly presented by the defense attorney. And the prosecutor in this case, the first five statements to the jury were all arguments. They weren't questions. They were arguments. It was if Jerry intended to kill himself, why did he have more than one weapon? If Jerry intended to kill himself, why did he have all this ammunition? And I just felt like... as opposed to some old-timey remarks about what the process is. Well, we've all learned, Judge, that an opening statement is supposed to be a table of contents to describe what the evidence is, but I think he went kind of a bridge too far here where he's actually making his closing argument at the beginning of the case. And it's not stopped by the defense attorney. The judge could have potentially stepped in and stopped it as well. And what compounds it too, Judge, is that when the prosecutor starts describing the nature of the charges, he says that Mr. Edwards is charged with shooting Deputy Benford. And I know that wasn't what the proof was, and two weeks later, by the conclusion of the trial, the jury has either learned that's the situation or they're wondering, you know, what happened to this evidence of the deputy that got shot. But the point is they're pointing out to the jury, we expect to show that this individual, Jerry Edwards, actually shot somebody. And the problem with that, Judge, is they've got that in their minds going through most of the trial. Wouldn't that be more detrimental to the prosecution than the defense? If it's brought up, correct, Judge. If it's brought up, it's argued that the prosecution didn't deliver what it promised to deliver. But it's still – when the defense attorney, Mr. Clancy, gets up there and he's trying to say, look, my client didn't intend to hurt anybody, and the jury's looking at him sideways saying, well, he's accused he actually shot somebody. There's a charge like that. Your time is up, Mr. Krugman. Okay. Thank you, Judge. You'll have five minutes of rebuttal, sir, so thank you. Thank you. Any questions for him? No. Okay. Ms. Bailon? Bailon? Am I pronouncing your correct name? Bailon. Bailon. Thank you. May it please the Court. Counsel. Laura Bailon on behalf of the people. Defendant has essentially delivered a closing argument that just doesn't fit with where this case is procedurally at this time. The issue that must be addressed first, because this Court would have to address it whether the parties raised it or not, is this Court's jurisdiction. And this Court lacks jurisdiction over this appeal because the notice of appeal was not timely filed. Under Rule 606A, which applies through Rule 651D in this case, the filing of a notice of appeal is jurisdictional. That means that in the absence of a properly filed notice of appeal, the Court must dismiss the appeal. Defendant's notice of appeal was not timely in this case because under Rule 606B, successive post-judgment motions do not extend the time for filing a notice of appeal. A single motion to vacate, if it was a first motion directed at the judgment, would extend the time. But in this case, there was a successive motion. The motion to vacate, the motion to reconsider, was a successive post-judgment motion. It did not extend the time for filing a notice of appeal. So instead, the deadline was October 26, 2020, based on when the motion to reconsider was denied. But the notice of appeal wasn't filed until May 21, 2021. Apparently, there was some confusion over who was representing defendant when, but that doesn't change what the law says, what the rules state. Counsel, I believe in your brief, I may be incorrect, but did the Court's clerk send a notice to the original attorney and not to Mr. Fogel? So I believe what happened was the notice, the post-conviction, here's a general procedural history of the case, including when new counsel came in. Attorney Harris filed the original post-conviction petition. The post-conviction petition proceeded to an evidentiary hearing. Evidence was heard on the two issues raised in the original petition. While it's pending, new counsel files a motion for leave to enter an appearance, but not an entry of appearance. Then the trial court denied the petition. After that, the motion to reconsider was filed by new counsel. And the hearing on the motion to reconsider, I believe, was the hearing that old counsel was notified instead of new counsel, but then new counsel was called at the actual hearing. So that's when the confusion came into play. After the evidentiary hearing had already been held and the petition was already denied, that's when this phone call or misnotice was sent. And I think the court was confused because the court expected that an entry of appearance would have been entered and a motion to withdraw would have been granted, but instead there had been a motion for leave to enter an appearance that had been filed and never ruled on until the hearing on the motion to reconsider. To try to simplify these procedural aspects, on the day that the motion to reconsider was called by the court, the counsel who was present here today in court arguing the case, who was at least additional counsel, was not informed of the date. I believe that is correct. Other than that the judge attempted to call him after he realized that he wasn't there that day. Correct. All right. Do you see that presenting any problem with your previous argument that you started with, or do you believe the law is that once we've had our hearing, once we've had a decision, the clock starts ticking 30 days from that date there needs to be an appeal filed? I believe that the law and the rules are clear that 30 days within the denial of the first post-judgment motion, whatever that motion is, that's when the time runs up for filing the notice of appeal. So in this case the motion to vacate was a timely filed motion, in that it was filed while the court still had jurisdiction. Are you doing a motion to reconsider? Initially it was a motion to reconsider, right? Yes. So there's a motion to reconsider. The motion to reconsider is denied. After the motion to reconsider is denied, new counsel files a motion to vacate, the order denying the motion to reconsider. The first motion, the motion to reconsider, extended the time. It was a timely filed post-judgment motion. The second motion was a successive motion, and because it was successive, that is the reason why it didn't extend the time for filing the notice of appeal. And the first motion was ruled upon the merits with notice. Correct. Well, notice to counsel of record, which was old counsel because new counsel had not yet been actually filed an appearance. There was the motion for leave to file an appearance was pending. So there was not notice to the new counsel who had filed it. There was just a phone call. But regardless of that confusion, the Rule 606B says what it says. Independence for five refused relied on the Bell Federal case, which actually supports the people's position. In that case, the court held that successive post-judgment motions do not extend the time to appeal. The trial court in that case, like here, had heard and denied a successive post-judgment motion, but even though the court had heard and denied the successive motion, the court on appeal still found that that didn't extend the time to file a notice of appeal. Concerning the issues raised in defendant's brief, if this court concludes it does have jurisdiction, defendant has raised one procedural issue and four substantive issues. The people would address the procedural issue first. Defendant, in his brief, argued that his rights were somehow violated because the trial court did not allow him to add a new issue to the post-conviction petition after the petition had already been denied following a third-stage evidentiary hearing. There is nothing procedurally improper that occurred in this case. Defendant filed his post-conviction petition that raised two issues. An evidentiary hearing was held on those two issues. Evidence was presented on those two issues. The petition was denied. After that, defendant filed the motion to reconsider. After that, he filed a motion to vacate. Then he filed an addendum to the motion to vacate, and then he filed a second addendum to the motion to vacate. And only in the second addendum to the motion to vacate, the motion to reconsider, the order denying post-conviction petition was the issue actually raised. He wasn't entitled to add a new issue at that point to his original post-conviction petition. So there's nothing procedurally improper that occurred in this case. Concerning the substantive issues, not only do none of these substantive issues have any merit, they've all been procedurally defaulted. In defendant's reply brief, it seemed that he was arguing that plain error was somehow a way around the procedural default. But plain error concerns a different kind of procedural default. Plain error is for errors that were not preserved in the trial court when raised for the first time on direct appeal. But this is not a direct appeal. It's an appeal from the collateral proceeding of the post-conviction petition. The waiver that applies is set forth in the Post-Conviction Hearing Act at Section 122-3, which states that any claim not raised in the original or an amended petition is waived. And as that language has been interpreted by the Illinois Supreme Court in Jones, which was from 2004, that means that the appellate court lacks the authority to consider any such claims, claims that were not raised in the original or an amended petition. Defendant has conceded that none of the issues he raises in this appeal were included in that actual first post-conviction petition. And given that none of them were in that petition, they're all procedurally defaulted and cannot be considered at this time. Because the issues were all procedurally defaulted, the people believe that covers all the substantive issues, but I'd be happy to take questions on any of them if the court would like. Any further questions? Originally or amended petition, you just told us that was the law. Yes. Counsel's probably going to argue that his attempts were to amend that petition and to raise these issues. You're going to tell us that they're on time. Yes. And the trial judge certainly had the discretion not to allow the petition to be amended after it had already been denied following a third-stage evidentiary hearing. If these attempts to amend the petition had been made earlier, before the hearing, maybe the judge would have decided to exercise discretion and allow them to be added. But at the point at which they were attempted to be added, the judge did not permit them to be added, and the judge is within its discretion in not allowing them to be added at that late date. You're saying by definition an amended petition would be before you had a conclusive hearing, the hearing is over. Yes. You're saying if you're going to amend a petition, it obviously has to be done before the evidentiary hearing is concluded. I believe that's when the judge would decide to exercise the discretion to allow an amendment. I suppose it would be theoretically possible to permit an amendment afterwards, but no such permission was given in this case. Any further questions? No. Well, people would ask that this Court dismiss the appeal for lack of jurisdiction or, in the alternative, affirm the trial judge's order, which denied the post-conviction petition. Thank you, Your Honors. Thank you, Counsel. Thank you, Counsel. Ms. Fulton, rebuttal? Thank you. Well, Your Honors, I think that's exactly the point. What Jerry is asking for and what you gentlemen can give him that he hasn't been given yet is a full and complete examination and evaluation of all of the evidence. Counsel, do we have jurisdiction, is the question. Yes. How? I'm the founder of the question. How do we have jurisdiction over the claims that you have raised? Counsel just gave us a tutorial on the law and the fact that what was filed was filed after the time for it to be done. So that's our question. Well, again, I would cite to the language in the previous cited case, Bell Federal Savings and Loan, indicating that when a motion is made to vacate an order, the time of the appeal commences to run from the date that the motion is disposed of on its merits. And I would say that's number one. Number two, given the fact that in this special circumstance, the judge seemed to be reaching out to me to see what the status of, and it would be at a point where the counsel is indicating amendments should have been made, supplements should have been made at that point. If I had been contacted or made aware of the fact the judge was trying to reach out to me, I could have done something at that point. And I would just submit that in this case, because of the extraordinary circumstances, unusual circumstances, I would ask the court to view this in the manner that if I had known about it, I would have made the amendments back at that time that the judge was reaching out to contact me and made whatever amendments I could and asked for the same relief I'm asking for at this point. And like I'm saying, Judge, what Jerry is requesting here is just a complete examination of the record by an impartial judicial panel such as yourself. And I don't believe he ever had his day in court here, both because of the prosecutorial misconduct, the lack of his attorney stepping in and stopping the prosecutorial misconduct, and also the fact that this case was not properly investigated by his attorney. So I don't believe he's ever truly had his day in court. And he's requesting that you gentlemen look at all of this, the totality of circumstances, and also look at his condition at the time, too, Judge. This was not a person who was in a rationally functioning state of mind, according to the psychiatrist, Dr. Wessel Lue. And, you know, I think sometimes you've got to go to the book of Atticus and think about what he told Scout, that you never really understand a person until you climb inside their skin and walk around in them. And many of us really know what was going on with Jerry that day. And I can't say that I do, but the one thing I would suggest is, based on the objective, credible evidence, he was not intending to kill anyone but himself that day. And I would ask for your honors to render a decision that reflects that. Thank you. Thank you, counsel. Thank you, counsel, for your arguments this morning and for your written briefs. The case will be taken under advisement, and a written decision will be rendered in due course. And now the court will stand in recess for change of panel.